David **MIDKIFF** and Lexi Midkiff, Relators,

v.

Honorable William R. **SHAVER**, Judge, Respondent.

No. 07–89–0406–CV.

Court of Appeals of Texas, Amarillo.

March 22, 1990.

**400**

John Steven Dwyre, Lubbock, for relators.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

We granted leave to file this original mandamus proceeding to determine whether respondent, the Honorable William R. Shaver, Judge of the 140th District Court of Lubbock County, correctly held that the entire medical records of relators, David and Lexi Midkiff, were discoverable when they claimed damages for mental anguish with physical manifestations caused by the real parties in interest. Determining that only those records reasonably related to

medical attention sought for the symptoms of the mental anguish alleged are discoverable, we conditionally grant the writ of mandamus.

Relators sought to recover from the real parties in interest, American General Fire and Casualty Company, Walker and Solomon Agency, and Jim Solomon, damages allegedly arising from the mishandling of their insurance claim for water damage to their building and contents on 27 May 1987. After alleging violations of the Texas statutory law and the common law duty of good faith and fair dealing, relators included in their notice letter, sent in compliance with the Texas Deceptive Trade Practices Act, damages of $45,000 for mental anguish, albeit no specific dollar amount was contained in their petition.

Afterwards, in confirming their claims were for mental anguish and not for physical injuries, relators, in answering interrogatories, described their symptoms of the mental anguish. David listed stomachaches, headaches, high stress, ongoing depression, anger, and frustration. Lexi listed rapid heartbeat, shortness of breath, dizziness, exhaustion, stomachaches, headaches, ongoing frustration, depression, anger, and high stress. Both answered that no health care provider had been seen in relation to mental anguish.

Later, relators were requested in writing to execute sworn authorizations to provide "a complete copy of all medical and/or hospital records pertaining to [relators]." Objecting to the request, relators did not execute the medical authorization.

Still later, when deposed, David testified that he had not seen any doctor about his physical symptoms. When asked if she had sought medical attention for any of the symptoms of mental anguish, Lexi affirmed that she had, but, on the instruction of her counsel, declined to identify the doctor. Both relators refused, on instructions of counsel, to answer certain questions pertaining to medical attention in connection with their claims for mental anguish.

Thereafter, the real parties in interest moved the trial court to compel discovery.

Relators responded, invoking the physician-patient privilege provided by Texas Rules of Civil Evidence 509(b) and the confidentiality-of-mental-health-information privilege provided by Texas Rules of Civil Evidence 510(b).

By an order signed 12 December 1989, Respondent found that relators' assertion of mental anguish exceeds the common emotional reaction and places their emotional and mental condition in issue. He thereupon ordered relators to execute the medical authorizations requested, provide to the real parties in interest the names and addresses of all health care providers they have seen or from whom they have sought medical attention since 28 May 1987, and resubmit themselves for deposition and answer the certified questions they previously refused to answer, as well as additional questions that may bear upon answers given to the certified questions.

Relators contend that respondent so clearly abused his discretion by making the order that he should be compelled to rescind it. This obtains, they submit, because they have limited their action to exclude any issue of physical or mental injury, and have consistently represented to all parties and courts that they will not offer medical or psychiatric evidence on the issue of mental anguish. Therefore, they conclude, since there is no basis for respondent's finding that their assertion of mental anguish exceeds the common emotional reaction and raises their claims to mental injury, his order is in derogation of their invoked privileges.

Antithetically, the real parties in interest, embracing respondent's findings, justify his order as being grounded on a procedural rule of discovery with this provision:

> h. *Medical Records; Medical Authorization.* Any party alleging physical or *mental* injury and damages arising from the occurrence which is the subject of the case shall be required, upon written request, to produce, or furnish an authorization permitting the full disclosure of, medical records not theretofore furnished to the requesting party which are reasonably related to the injury or damages asserted.

Tex.R.Civ.P. 166b(2)(h) (emphasis added). They defend respondent's findings on the grounds that (1) relators' allegations of $45,000 damages for mental anguish makes it clear they were alleging more than mere mental anguish; (2) relators testified to physical manifestations; and (3) Lexi sought medical attention for some of her symptoms.

Given respondent's findings, the real parties in interest point out that an exception exists to each of the confidential privileges upon which relators rely

> as to communication or record relevant to an issue of the physical, *mental* or *emotional condition* of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense.

Tex.R.Civ.Evid. 509(d)(4), 510(d)(5) (emphasis added).

As a further reason, the real parties in interest submit that, as a practical matter, the medical records sought may or may not establish a pre-existing or unrelated condition bearing directly on whether relators' claimed physical conditions have any causal connection to their claims in this action. However, on submission, they conceded that under the state of the record, respondent's order, and logically their production request, is overbroad in encompassing all of relators' medical and hospital records without limitation as to time or subject matter.

Acceptance of the concession entitles relators to relief from the ordered disclosure of all their medical and hospital records. Then, the remaining and crucial question is whether, as relators contend, respondent abused his discretion by allowing any discovery at all.

■ Although the scope of discovery rests within the discretion of the trial court, *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 108 (Tex.1985), mandamus will lie to vacate orders which are void and for which there is no adequate remedy by appeal, or where there has been a gross abuse of discretion. *State v. Sewell,* 487

S.W.2d 716, 718 (Tex.1972). An abuse of discretion occurs when the trial court's action is arbitrary, unreasonable or based upon a gross and prejudicial error of law, *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985), or is without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Then, by attacking respondent's order on the clear-abuse-of-discretion ground, relators have assumed the heavy burden of establishing that respondent lacked the discretion to make the decision entered, because the facts and law required a different decision. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d at 917–18.

In the past, the distinction between mental anguish and mental injury was not firmly drawn in Texas law. The blurring occurred in recognized exceptions to the general rule that recovery for mental anguish requires proof of a physical injury, or a physical manifestation of mental anguish. The exceptions permitted recovery for *mental anguish* without proof of physical manifestations in cases of intentional torts, gross negligence, or a willful and wanton disregard for another's rights, because the "nature of the torts assumes that the claimants will suffer *mental injury* " and, therefore, "[t]here is no need to require proof of physical manifestation of the *mental injury.*" *Moore v. Lillebo*, 722 S.W.2d 683, 684–85 (Tex.1986) (emphasis added).

Later, it was settled that a routine allegation of mental anguish does not raise an issue of the party's mental condition in the absence of an assertion of mental injury that exceeds the common emotional reaction to an injury or loss. *Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex.1988). In this regard, mental anguish is the emotional distress that typically accompanies the tortious act, *id.* at 752; *Moore v. Lillebo*, 722 S.W.2d at 688, and it may, though it need not, result in physical injury or physical manifestations. *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 652–53 (Tex. 1987).

In this case, relators' allegation of mental anguish was the ordinary one. Although afterwards they identified both emotional and physical manifestations of their mental anguish, the physical manifestations named were only those commonly associated with mental anguish. *See e.g., id.* at 652; *Moore v. Lillebo*, 722 S.W.2d at 686.

Then, contrary to respondent's finding, relators did not place their mental condition in issue so as to justify discovery of their medical or mental health records on that condition pursuant to the authorization of rule 166b(2)(h), *supra*, or under the mental condition exception of rules 509(d)(4), or 510(d)(5), *supra*. This determination is not altered by the fact that they valued their mental anguish at $45,000, a sum viewed by the real parties in interest as extending their allegation to more than mere mental anguish. The amount sought does not convert a mental anguish allegation into some other claim; rather, the amount is, like any other damage demand, only a claim subject to proof, which is best submitted to jurors for evaluation based upon their own experiences. *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d at 654. Neither is the determination altered by the fact that Lexi sought medical attention for some of the symptoms of her mental anguish. Absent a showing that she sought psychiatric treatment or proposes to offer psychiatric or psychological testimony to prove her mental anguish, her mental condition is not in issue. *Coates v. Whittington*, 758 S.W.2d at 752.

Nevertheless, since the record does show that Lexi has sought medical attention for some of the symptoms of her mental anguish, a connection is established between her mental anguish complaint and the medical attention she sought. In this regard, we are mindful of the representation that medical evidence will not be offered on the issue of mental anguish; but, so long as she seeks damages by relying upon the symptoms of mental anguish for which she sought medical attention, she cannot use her invoked privileges as a shield to prevent discovery of medical and

mental health records related to her asserted emotional condition. Tex.R.Civ.Evid. 509(d)(4), 510(d)(5); *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d at 107.

Similarly, so long as she and David pursue their claims for mental anguish with the described physical manifestations, neither of them may refuse to answer questions pertaining to medical attention sought in connection with those claims. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d at 107. Without regard to whether the information elicited by the questions will be admissible at trial, the discovery is at least authorized, with limitations, from the appearance that the questions are so connected with the allegation that they are reasonably calculated to lead to the discovery of admissible evidence. Tex.R.Civ.P. 166b(2)(a); *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984).

It follows that under this record, the scope of discovery should have been limited to the medical and hospital records and questions related to the medical attention sought for the symptoms of the respective mental anguish claims. Consequently, respondent clearly abused his discretion by subjecting all of relators' medical records to discovery by ordering the execution of the medical authorizations requested, and mandamus is proper to require the vacation of the order. *West v. Solito*, 563 S.W.2d 240, 246 (Tex.1978).

We have not overlooked relators' oblique reference to requiring an *in camera* inspection by the trial court of any discovery we find less intrusive than that ordered by respondent. Although we have determined, aside from the concession by the real parties in interest, that as a matter of law respondent's discovery order is overbroad, it is respondent's discretion, not ours, that is to be exercised in independently deciding the discoverability and admissibility of medical evidence upon the record as constituted when presented for his decision. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d at 108. Consequently, an *in camera* inspection of any materials claimed to be privileged is a matter for respondent to decide first. *Loftin v. Martin*, 776

S.W.2d 145, 147 (Tex.1989); *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex.1985).

We are confident that respondent will promptly set aside his 12 December 1989 discovery order. The writ of mandamus will issue only if he fails to do so.